ANDREW L. AND MELINDA M. CLARK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Clark v. Commissioner
Docket No. 23248-89
United States Tax Court
T.C. Memo 1991-313; 1991 Tax Ct. Memo LEXIS 365; 62 T.C.M. (CCH) 95; T.C.M. (RIA) 91313; July 9, 1991, Filed *365 Decision will be entered under Rule 155. Neil Deininger, for the petitioners. Nancy W. Hale, for the respondent. DAWSON, Judge. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION In a notice of deficiency dated June 26, 1989, respondent determined the following deficiencies in and additions to petitioners' Federal income taxes: Additions to Tax, Sections
Year
Deficiency
6653(b)
6653(b)(1)
6653(b)(2) [1]
1981
$  7,458.00
$ 7,010.50
1982
10,042.00
$ 8,296.00 *
1983
12,239.34
6,119.67 **
Various concessions have been made by the parties which will be reflected in the Rule 155 computations. At issue is whether petitioners are liable for the additions to tax for fraud under section 6653(b) for the years *366 in question. Assessments for the years 1981 and 1982 are barred by the statute of limitations in the absence of fraud. Prior to the trial of this case, petitioners filed a proceeding under chapter 13 of the Bankruptcy Act in the United States Bankruptcy Court, Eastern District of Arkansas, Little Rock Division. Pursuant to an Emergency Motion for Relief from Automatic Stay filed on December 7, 1990, the automatic stay was modified by the Bankruptcy Judge to permit the Tax Court to decide the issues presented herein and to enter its decision for the years 1981, 1982, and 1983. In his order modifying the automatic stay, the Bankruptcy Judge requested that "the Tax Court set forth the burdens of proof and persuasion to be met by the parties" and its "determination thereof." FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. On September 10, 1990, respondent served requests for admissions on petitioners. They initially answered the requests on October 16, 1990, and filed amended answers with the Court on December 5, 1990. Our findings of fact are based in part on *367 such admissions. General
Petitioners resided in Little Rock, Arkansas, when they filed their petition in this case. They were married on June 20, 1981. Andrew L. Clark (hereinafter Mr. Clark) is an attorney who has practiced law in Arkansas since 1973. Melinda M. Clark (hereinafter Mrs. Clark) has been a court reporter since 1975. During the years 1981 through 1983 she was employed by the State of Arkansas, Pulaski County, and worked independently as a sole proprietor. On their joint Federal income tax returns for the taxable years 1981, 1982, and 1983, which were filed with the Internal Revenue Service Center at Austin, Texas, petitioners reported the following gross receipts from Mr. Clark's law practice: Gross
Year
Receipts
1981
$ 45,763
1982
40,640
1983
52,866
On their joint Federal income tax returns for the same years petitioners reported net profits from Mr. Clark's law practice as follows: Year
Net Profits
1981
$ 24,190
1982
19,105
1983
28,878
On their joint Federal income tax returns for the years in issue petitioners reported the following gross income received by Mrs. Clark as a court reporter: 1981
1982
1983
Wages
$ 20,892.64
$ 22,515.96
$ 14,540.33
Schedule C
9,186.00
5,346.00
9,027.00
*368 On their joint Federal income tax returns for the years in issue petitioners understated their Schedule C gross receipts from their businesses as follows: Amounts of Understated
Year
Gross Receipts
1981
$ 15,691.45
1982
16,298.64
1983
21,075.43
During the years in issue petitioners made total deposits to their joint personal checking account, including a $ 5,000 certificate of deposit in 1981, at the Union National Bank as follows: Year
Total Deposits
1981
$ 56,416.76
1982
43,586.60
1983
58,400.23
Because petitioners failed to maintain adequate books and records in their businesses, respondent determined by a bank deposits analysis that they underreported their gross receipts, and they claimed unallowable deductions and expenses on Schedules A, C, and E of their income tax returns. Petitioners did not file estimated Federal income tax returns for 1981, 1982, and 1983 and did not make any estimated tax payments in those years. 1981
In 1981 Mr. Clark had business checking accounts at the First National Bank and the First American Bank in Little Rock. The gross receipts reported on his Schedule C for 1981 consist solely of the business income from *369 his law practice deposited into his business checking accounts. During 1981 Mr. Clark deposited taxable income into his First National Bank and First American Bank business accounts in the total amount of $ 49,557.04 and into a personal account at Twin City Bank in the amount of $ 1,317.10. Of those amounts, $ 4,694.04 of the deposits into the business accounts and the $ 1,317.10 deposited into the Twin City Bank account were taxable income to Mr. Clark which was not reported on petitioners' 1981 income tax return. During 1981 Mr. Clark deposited Schedule C business income in the amount of $ 5,304.28 from his law practice directly into petitioners' personal joint checking account at Union National Bank. They did not report Mr. Clark's income deposited directly into their personal checking account on their 1981 income tax return. The dates and amounts of the checks deposited in the Union National Bank account and not reported on their 1981 tax return were as follows: Date
Amounts
3/18/81
$    34.00
6/30/81
198.00
7/6/81
54.00
7/13/81
350.00
7/13/81
1,034.35
7/16/81
2,000.00
7/20/81
74.50
7/21/81
263.50
7/28/81
420.00
8/3/81
1,517.00
8/11/81
45.00
9/29/81
323.00
10/27/81
497.50
10/31/81
15.66
11/3/81
60.00
12/28/81
25.00
12/29/81
98.95
TOTAL
$ 7,010.46
*370 A portion ($ 1,706.18) of the checks listed above was considered to have been reported on Mrs. Clark's Schedule C. The remaining $ 5,304.28 was not reported on their 1981 income tax return. Petitioners also deposited $ 5,000 of their taxable income in 1981 from Mr. Clark's law practice into a certificate of deposit at the Union National Bank. That taxable income was not reported on their 1981 income tax return. During 1981 Mr. Clark made six separate deposits, totaling $ 2,394.46, directly into his business checking accounts that should have been deposited into his attorney trust account. Petitioners overstated by $ 1,135.34 Mr. Clark's Schedule C expenses from his law practice on their 1981 income tax return. Petitioners overstated by $ 3,047.46 their Schedule A itemized deductions on their 1981 income tax return. Petitioners overstated by $ 278.60 a short-term capital loss for 1981. Petitioners understated their income tax liability for 1981 in the amount of $ 7,457.20. 1982
In 1982 Mr. Clark continued to maintain a business checking account at the First National Bank. The gross receipts reported on his Schedule C for that year consist solely of the business income *371 from his law practice deposited into his business checking account at the First National Bank. During 1981 Mr. Clark deposited taxable income of $ 44,057.56 into his First National Bank business account. Of that amount, $ 3,417.56 was taxable income that was unreported on petitioners' 1982 income tax return. During 1982 petitioners deposited $ 7,612.56 of Schedule C business income from Mr. Clark's law practice directly into their joint personal checking account at the Union National Bank. The dates and amounts of checks deposited in the Union National Bank account and not reported on petitioners' 1982 income tax return were as follows: Date
Amount
2/26/82
$    59.05
2/26/82
57.80
2/26/82
58.16
2/26/82
16.00
3/-/82
85.00
3/16/82
500.00
3/17/82
4.00
4/15/82
50.00
5/28/82
175.00
6/3/82
100.00
6/15/82
1,069.09
6/25/82
1,000.00
7/16/82
75.00
8/3/82
1,100.00
9/3/82
100.00
9/10/82
800.00
9/16/82
255.00
9/24/82
293.00
9/27/82
100.00
10/8/82
588.85
10/18/82
200.00
11/9/82
35.00
11/10/82
200.00
11/11/82
341.61
11/30/82
200.00
12/1/82
150.00
TOTAL
$ 7,612.56
During 1982 petitioners deposited $ 12,254.87, $ 408.08, and $ 131.87 *372 into their joint personal accounts at Union National Bank, Saver's Federal, and People's Savings, respectively, which amounts were not reported on their 1982 income tax return. Petitioners overstated by $ 765.05 Mrs. Clark's Schedule C expenses from her court reporting business on their 1982 income tax return. Petitioners overstated by $ 4,230.87 their Schedule A itemized deductions on their 1982 income tax return. None of the short-term capital loss carryover of $ 2,261 claimed on the petitioners' 1982 income tax return is allowable. Petitioners understated their income tax liability for 1982 in the amount of $ 9,435.79. 1983
In 1983 Mr. Clark continued to maintain a business checking account at the First National Bank. The gross receipts reported on his Schedule C for that year consist solely of the business income from his law practice deposited into his business checking account at the First National Bank. During 1983 Mr. Clark deposited taxable income totaling $ 53,974.18 into his First National Bank business account. Of that amount, $ 2,594.18 was taxable income to Mr. Clark which was not reported on petitioners' 1983 income tax return. During 1983 petitioners *373 deposited Schedule C business income from Mr. Clark's law practice directly into their joint personal checking account at the Union National Bank. They did not report such income on their 1983 income tax return. In 1983 petitioners deposited $ 18,331.66 into their joint personal account at the Union National Bank which was not reported on their 1983 income tax return. During 1983 petitioners deposited 16 separate checks from clients, totaling $ 12,725.19, payable to Mr. Clark for attorney's fees, directly into their joint personal checking account at the Union National Bank and failed to report that income on their 1983 income tax return. The dates and amounts of such checks were as follows: Date
Amount
1/4/83
$    300.00
1/7/83
100.00
1/21/83
100.00
2/4/83
25.60
2/25/83
40.50
3/10/83
200.00
3/15/83
35.00
4/7/83
350.00
4/21/83
213.08
6/15/83
4,250.00
10/27/83
500.00
10/31/83
244.67
11/15/83
450.00
11/23/83
242.34
12/5/83
190.00
12/28/83
5,484.00
TOTAL
$ 12,725.19
During 1983 Mr. Clark deposited $ 833 directly into his business account that should have been deposited into his attorney trust account. Petitioners overstated by $ 1,504.26 *374 Mr. Clark's Schedule C expenses from his law practice on their 1983 income tax return. Petitioners overstated by $ 4,680.06 their Schedule A itemized deductions on their 1983 income tax return. Petitioners overstated by $ 2,785.67 Mrs. Clark's Schedule C expenses from her court reporting business on their 1983 income tax return. None of the Schedule E rental loss of $ 4,759.61 claimed on petitioners' 1983 income tax return is allowable. Petitioners understated their income tax liability for 1983 in the amount of $ 11,870.79. Petitioners' Knowledge
Petitioners knew at the time they filed their 1981, 1982, and 1983 Federal income tax returns that all the gross receipts from Mr. Clark's law practice for those years had not been deposited into his business checking accounts. Petitioners knew at the time they filed their 1981, 1982, and 1983 Federal income tax returns that all gross receipts from their businesses as an attorney and as a court reporter were taxable and should have been reported as income on their income tax returns. Mr. Clark had discussed using deposits to a business bank account to compute gross receipts from his law practice with both his former tax return *375 preparer and a neighbor who was a certified public accountant. He knew that the deposits to his business account could be used to compute gross receipts only if all business receipts were deposited to his business account. Preparation of Tax Returns
Mr. Clark personally prepared petitioners' Federal income tax returns for 1981 and 1982. Their 1983 tax return was prepared by Mr. Clark's brother-in-law, Arthur C. Mueller, who has an accounting degree and is presently an internal revenue agent in the Southwest Region. Petitioners did not inform Mr. Mueller that some of Mr. Clark's client fees had been deposited into their personal checking account. Petitioners determined the income they reported in 1983. Although Mr. Mueller advised them to set up an accounting system, they did not do so. Examination of Tax Returns
On or about October 5, 1983, Paula Woolsey, an internal revenue auditor, began an examination of petitioners' income tax returns for 1981 and 1982. When reviewing Mr. Clark's business bank accounts on March 3, 1984, she noted a discrepancy of about $ 8,600 between the deposits and gross receipts reported on petitioners' 1981 income tax return. She then requested *376 that Mr. Clark explain the discrepancy. She also questioned Mr. Clark about a May 14, 1981, deposit of a client's fee into his personal checking account at the Twin City Bank. When the auditor noted other deposits made to petitioners' joint personal checking accounts, Mr. Clark acknowledged that such deposits were income items from his law practice which were deposited into personal checking accounts. Mr. Clark's explanation for depositing income items directly into petitioners' joint personal checking account was that checks written on his business account and deposited into the personal account had bounced, causing him to initiate the practice of making deposits of client funds directly into the personal account. His explanation to the auditor for not reporting the income deposited into the personal account on petitioners' income tax returns was that he had simply forgotten to do it. Of the checks from the business account deposited into the joint personal account, only five checks were returned for insufficient funds. Those checks were dated December 4, 1981; August 2, 1982; August 26, 1982; May 9, 1983; and July 6, 1983. To the extent checks from Mr. Clark's business account *377 were returned for insufficient funds, the returned checks from clients were not honored. During the course of her examination, the tax auditor issued seven document requests to petitioners and conducted six interviews with them. Petitioners never provided all the information and documents requested by the auditor. Although Mrs. Clark kept a diary of her court reporting income, the diary was never provided to respondent's agents. Mr. Clark told the tax auditor that he kept no formal books and records for his law practice. The last action taken by the tax auditor was to refer petitioners' examination to the Criminal Investigation Division where it was assigned to Rufus Banks, a special agent. On April 9, 1985, at the initial interview by the special agent, Mr. Clark voluntarily stated, without being asked, that he had corrected his failure to report funds deposited directly into the joint personal checking account in filing petitioners' 1983 income tax return. At that time their 1983 income tax liability was not being investigated. Later the special agent requested some bank records from Mr. Clark and he discovered that there was also substantial unreported income for that year. *378 Following a recommendation for criminal prosecution for income tax evasion, the United States sought an indictment by presenting the years 1982 and 1983 to a Grand Jury for the Eastern District of Arkansas in May 1989. The Grand Jury returned a no true bill. ULTIMATE FINDING OF FACT The underpayments of tax required to be shown on petitioners' Federal income tax returns for the years 1981, 1982, and 1983 were due to fraud with intent to evade tax. OPINION For the year 1981, section 6653(b) imposes a 50-percent addition to tax on an underpayment any part of which is due to fraud. For the years 1982 and 1983, section 6653(b)(1) imposes a 50-percent addition to tax on an underpayment any part of which is due to fraud, and section 6653(b)(2) imposes an addition to tax of 50 percent of the interest due on the part of the underpayment due to fraud. The existence of fraud is a question of fact to be resolved by an examination of the entire record. . The Commissioner has the burden of proving by clear and convincing evidence that there is an underpayment in income tax for each year, and that at least part of the *379 underpayment was due to fraud. Sec. 7454(a); Rule 142(b); . Fraud is not presumed but must be affirmatively established. . Direct evidence of fraudulent intent is seldom available and whether it exists must be determined from the taxpayer's pattern of conduct, the effect of which is to mislead or conceal. ; . Fraudulent intent has been inferred from various kinds of circumstantial evidence, the so-called "badges of fraud." , affg. a Memorandum Opinion of this Court. As reflected in our ultimate finding of fact, the entire record in this case clearly and convincingly establishes that petitioners' underpayments of their income tax for 1981, 1982, and 1983 were due to fraud. The factors supporting a finding of fraud are discussed below. 1. Petitioners' Sophistication, Experience, and Education
The sophistication of a taxpayer is *380 relevant in determining whether fraud exists. , affd. . As a practicing attorney, Mr. Clark had special knowledge of the law. When he underreported his income tax liabilities for the years at issue, he had been engaged in the practice of law for several years. He discussed accounting for his Schedule C income with the return preparer of his 1980 return, with a neighbor who was a certified public accountant, and with his brother-in-law who was an accountant. It is unlikely that an attorney who practiced law successfully for over a decade would "forget" diverting substantial income from his business to his personal checking account for 3 consecutive years. It is also unlikely that he would not have realized that his income tax liabilities were underreported by 65 percent, 59 percent, and 69 percent in 1981, 1982, and 1983, respectively. As an experienced court reporter, Mrs. Clark was well educated and familiar with legal requirements. She successfully operated her own business. We think she must have known that she and her husband were depositing substantially *381 more money into their personal bank account in 1981, 1982, and 1983 than they were reporting as taxable for those years. She must have been aware that their financial position was improving rather than diminishing in those years. 2. Consistent and Substantial Underpayments of Income Tax
Petitioners consistently and substantially under-reported their Federal income tax liabilities during the years at issue. They reported less than one-half of their income tax liabilities in each year, understating their 1981, 1982, and 1983 liabilities by 65.3 percent, 59 percent, and 69.2 percent, respectively. They reported taxable incomes in relatively consistent amounts each year, when in reality their taxable income was steadily increasing each year and was the highest in 1983. Their reported tax liabilities also remained fairly constant. This consistency in reporting existed despite the fact that petitioners' taxable income and tax liabilities were both increasing in 1981, 1982, and 1983. 3. Consistent and Substantial Understatements of Income
Consistent and substantial understatement of income is, by itself, strong evidence of fraud. , *382 affd. without published opinion . A pattern of consistent under-reporting of income, when accompanied by other circumstances indicating an intent to conceal income, justifies the inference of fraud. . Petitioners under-reported their gross receipts by $ 15,691.45 in 1981, $ 16,298.64 in 1982, and $ 21,075.43 in 1983. They failed to report 22.2 percent, 26.2 percent, and 25.4 percent of the gross receipts from their Schedule C businesses. They did not keep adequate records and they diverted income from Mr. Clark's law practice while reporting only the funds deposited in his business account on their tax returns. They followed such practice for at least 3 years even though they knew that all gross receipts were taxable and that not all of Mr. Clark's gross income had been deposited into his business checking account. Mr. Clark knew that he could use the total deposits to his business account to determine his business gross receipts only if he deposited all his business receipts into the business account. In spite of his knowledge, petitioners failed to report client *383 fees that were deposited directly into their personal account during the 1981, 1982, and 1983 tax years totaling at least $ 11,641.38, $ 7,612.56, and $ 12,725.19, respectively. 4. Failure to Maintain Adequate Books and Records
Failure to maintain adequate books and records of income generally and failure to keep records of income diverted and unreported are both indicative of fraud. ; , affd. without published opinion . Petitioners claimed at times to have kept records and at other times not to have kept them. They did not provide records to respondent's agents or at trial. Their refusal and failure to produce records of their income creates a presumption that the records would have been unfavorable to them if they had been produced. . 5. False and Misleading Statements
False and misleading statements to respondent's agents are indicia of fraud. ; *384 . In statements made to the tax auditor and the special agent, Mr. Clark claimed that the problems with the reporting of income for 1981 and 1982 had been corrected on his 1983 income tax return. That return was not filed until after the problems with the 1981 and 1982 returns had been pointed out to Mr. Clark. Obviously believing that their 1983 income tax return would not be examined, petitioners continued to omit taxable income and attempted to mislead respondent to prevent their 1983 return from being examined. Petitioners attempted to explain the diversion of Mr. Clark's income to their personal checking account by claiming that they initiated the practice because checks written on his business bank account deposited in the personal account were returned due to insufficient funds in the business account. The facts do not support that explanation. Mr. Clark made at least one deposit to his personal account on May 14, 1981, before he and Mrs. Clark were married and 6 months before any business account check deposited into the personal account was dishonored. The first check from the business account deposited *385 to the personal account to be returned for insufficient funds was dated December 4, 1981. At most, only $ 123.95 of the client funds deposited into the personal account in 1981 was deposited after a check from Mr. Clark's business account was first returned. The remaining client funds ($ 5,180.33), consisting of 14 separate checks, were deposited directly into the joint personal checking account before any checks were returned. Eighteen checks written on Mr. Clark's business account, totaling $ 12,619, were deposited into the personal account in 1982; and 23 checks written from the business account, totaling $ 16,640, were deposited into the personal account in 1983. Such numerous deposits in large total amounts are inconsistent with petitioners' claimed concern that checks from Mr. Clark's business account might not be honored. In our view petitioners did not divert funds from Mr. Clark's business to their personal account to avoid dishonored checks; they diverted those funds because they hoped that they might avoid being taxed on the income. Once they were questioned, petitioners knew that respondent could uncover the diversion and they then gave a false explanation that appeared *386 plausible on its face but does not withstand scrutiny. During the examination of their income tax returns, petitioners took the position that Mr. Clark prepared their 1981 and 1982 returns and that Mrs. Clark's brother prepared their 1983 return. After petitioners realized that respondent was not accepting their explanation for failing to report substantial amounts of their income, they changed their position by trying to shift the blame to Mrs. Clark's brother, claiming that he prepared the returns for all 3 years. We think petitioners' account of their return preparation given during the examination and investigation is more accurate than their assertions at the trial. It is clear that the person who prepared petitioners' 1981 and 1982 income tax returns is not the same person who prepared the 1983 return. Petitioners changed their position about their return preparation only when they felt they needed to shift the blame for their false returns. Despite their claim of reliance on Mrs. Clark's brother, petitioners did not rely on his advice and the accounting system he suggested. To the extent petitioners utilized Mr. Mueller's assistance in preparing their returns, they failed *387 to advise him that not all of Mr. Clark's income was deposited into the business checking account. Reliance upon an accountant to prepare accurate returns negates fraudulent intent only if the accountant has been supplied with all the information necessary to prepare the returns. . Here petitioners were responsible for the substantial under-reporting of their 1981, 1982, and 1983 income tax liabilities. 6. Failure to Comply with Known Reporting Requirements
An awareness of reporting requirements and failure to comply with those requirements is indicative of fraud. ; . Mr. Clark was advised by the preparer of his 1980 income tax return that he could use the total deposits to his business bank account as his Schedule C gross receipts only if he deposited all income to his business account. He also discussed using business account bank deposits to determine gross receipts with a certified public accountant. Mr. Mueller set up an accounting system for petitioners *388 but they never used it. They knew at the time each of the returns was filed that all gross receipts were taxable and that not all Mr. Clark's gross receipts had been deposited into his business account. They nevertheless chose not to consider the deposits to the personal account in computing their income for those years. 7. Refusal to Cooperate in Determination of Liabilities
Refusal to cooperate in the examination and investigation of tax liabilities is an indicia of fraud. ; . Although petitioners assert that they were cooperative, they were cooperative only to a limited extent. They did not volunteer truthful information against their interest; they merely confirmed what they knew respondent already knew or was about to ascertain. The tax auditor had to conduct six interviews and issue seven document requests. In spite of attempts to obtain information, the tax auditor never received the necessary information she requested. The books and records of petitioners' Schedule C businesses were never provided. Their return preparation workpapers were *389 never provided. While they claimed to have prepared amended returns during the examination and investigation, no amended returns were ever provided to respondent. 8. Overstatements of Business Expenses and Itemized Deductions
Petitioners overstated their Schedule C business expenses by $ 1,135.34 in 1981, $ 765.05 in 1982, and $ 4,289.93 in 1983. They also overstated their Schedule A itemized deductions by $ 3,047.46 in 1981, $ 4,230.87 in 1982, and $ 4,680.06 in 1983. This shows a consistent pattern of claiming excessive business expenses and deductions over the 3-year period. It is well settled that a fraudulent understatement of income can be accomplished by such overstatements. See , and cases cited therein; , affd. without published opinion ; . Conclusion
Taking into consideration all the facts and circumstances present in this case, we hold that petitioners are liable for the additions to tax for fraud under section 6653(b) *390 on the amounts of the underpayments, except those conceded by respondent, for the years 1981, 1982, and 1983. To reflect the concessions made by the parties and our conclusion with respect to the disputed issue, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code as amended and in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. * 50 percent of the interest due on $ 16,570. ** 50 percent of the interest due on $ 12,239.34.↩